Ether L. BARNES, Plaintiff-Appellant,

v.

JONES COUNTY SCHOOL DISTRICT et al., Defendants-Appellees.

No. 75–3162.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Richard M. Sharp, Stephen J. Pollak, David Rubin, Washington, D. C., for plaintiff-appellant.

Robert Sullivan, John L. Jeffries, Laurel, Miss., for defendants-appellees.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

In the academic years 1967–68 through 1969–70 the plaintiff, a black teacher, taught high school English in an all-black school in the Jones County (Mississippi) District. In April 1970 the district entered into a compliance agreement with HEW pursuant to which the district was to desegregate its schools effective at the commencement of the 1970–71 year. The compliance agreement required the district to comply with paragraph 3 of the staff and faculty provisions of *Singleton v. Jackson Municipal Separate School Dist.*, 419 F.2d 1211 (CA5, 1969) (en banc), *rev'd in part sub nom. Carter v. West Feliciana Parish School Bd.*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970) (reversal limited to timing of desegregation). These provisions are set out in the margin.[1]

---

1. "3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

'Demotion' as used above includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously,

The school district closed all of the black schools effective for the 1970–71 year, including the school at which plaintiff had been teaching. The pupils attending these schools were reassigned to the formerly white schools in the district. Plaintiff was selected to, and did, teach English at a formerly white high school for the 1970–71 year. In March 1971, the school board selected teachers for the 1971–72 year and did not choose plaintiff.

Plaintiff sued for reinstatement and back pay, claiming that she was demoted for the 1970–71 year and that the demotion, and the failure to renew her contract for 1971–72, were improper on three grounds: the *Singleton* standards were violated; she had an expectation of employment and was deprived of property or of a liberty interest without due process; the actions of the board were racially discriminatory and therefore violated equal protection.

The district court held that the *Singleton* paragraph 3 standards did not control because plaintiff's alleged demotion, and her notice of nonrenewal for the succeeding year, occurred after the school system had become unitary. On the due process claim, it held that plaintiff had proved no valid expectation of reemployment and had been deprived of no liberty or property interest. The court did not reach the equal protection claim. We affirm in part, vacate in part and remand.

Plaintiff claimed that her teaching position in 1970–71 was a demotion because she was placed in a position that previously had been held by a white teacher who was out for the year because of pregnancy. The position was, plaintiff claimed, subject to a right of the absent teacher to "bump" plaintiff for the place, the white teacher claimed the position for the 1971–72 year, and plaintiff was "bumped" out of a contract for that year.

We affirm the finding that the *Singleton* standards do not apply to plaintiff's claim

but for a reason different from that of the trial court. The court found the *Singleton* standards were inapplicable to the system because during 1970–71, the first year of operation under the compliance agreement with HEW, the system had complied with the terms of this agreement and therefore was "unitary." *Thompson v. Madison Cty. Bd. of Educ.*, 476 F.2d 676 (CA5, 1973); see *McLaurin v. Columbia Municipal Separate School Dist.*, 478 F.2d 348, 352, *en banc court dissolved*, 486 F.2d 1049 (CA5, 1973). A segregated school system does not instantaneously achieve unitary status.

> The [district] has been a unitary system for only one semester. . . . In *Singleton* we made it clear that . . . testing . . . could not be used until a school district had been established as a unitary system. We think at a minimum this means that the district in question must have for several years operated as a unitary system. . . . "One swallow does not make a spring."

*Lemon v. Bossier Parish School Bd.*, 444 F.2d 1400, 1401 (CA5, 1971). See also *U. S. v. Gadsden Cty. School Dist.*, 539 F.2d 1369, 1378 n. 17 (CA 5, 1976); *U. S. v. Corinth Municipal Separate School Dist.*, 414 F.Supp. 1336 (N.D.Miss., 1976); *McCormick v. Attala Cty. Bd. of Educ.*, 407 F.Supp. 586 (N.D.Miss.), *vacated and remanded on other grounds*, 541 F.2d 1094 (CA5, 1976); *Keglar v. East Tallahatchie School Dist.*, 378 F.Supp. 1269 (N.D.Miss.,1974); *Pickens v. Okolona Municipal Separate School Dist.*, 380 F.Supp. 1036 (N.D.Miss., 1974), *aff'd*, 527 F.2d 358 (CA 5, 1976); *U. S. v. Coffeeville Consolidated School Dist.*, 365 F.Supp. 990 (N.D.Miss., 1973), *aff'd as to this issue*, 513 F.2d 244 (CA 5, 1975).

 Pretermitting the question of whether plaintiff proved that her 1970–71 job assignment was a demotion, we hold that paragraph 3 of the *Singleton* standards did not apply for that year because there was no reduction in force of the overall

---

or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably

current period. In general and depending upon the subject matter involved, five years is such a reasonable period."
419 F.2d at 1218.

faculty. There was an increase from 321 to 328. (In the succeeding two years there were further increases to 353 and 359.) Joint App. at 27a. By its own terms paragraph 3 is limited to the situation in which there is "a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district." We adhered to that language in *Pickens v. Okolona Municipal Separate School Dist., supra.*

There is, however, a factual difference between this case and *Pickens.* In *Pickens* there was no reduction in the number of blacks in the faculty. In this case, although the overall faculty increased in 1970–71, the number of blacks in that faculty decreased from 68 to 55. Does paragraph 3 of *Singleton* apply? We think not. *Singleton* was a massive case involving a number of school districts. Its standards were carefully drawn and were considered and approved by this court en banc. They reflect a recognition that when dual school systems are merged into a single system fewer teachers may be required. Paragraph 3 attempts to remedy this limited problem of fewer available jobs. It does not purport to be a plenary tool for all desegregating systems, or for all desegregating systems in which there are fewer black faculty members than there were during the preceding year. Unless there is a reduction in force, the black faculty member claiming racially discriminatory discharge or demotion proceeds under the Fourteenth Amendment.

▪ Even if a panel of this court has the authority to extend paragraph 3 requirements to govern a situation not included in the terms of paragraph 3, we think that such a decision should be made by the court en banc. That is especially so when the holding of *Pickens* is that there must be a reduction in overall faculty.

The claim that there was an expectation of employment and a deprivation of liberty or property interest has been abandoned on appeal.

▪ The case must be remanded for determination of the undecided claim that equal protection was violated by racially-based discrimination. The immediately past history of racial discrimination in this system established a prima facie case of violation of equal protection in plaintiff's alleged demotion and discharge, so that on remand the burden will be upon the school district to justify its actions, *Roper v. Effingham Cty. Bd. of Educ.,* 528 F.2d 1024 (CA5, 1976), by "clear and convincing evidence," *Baker v. Columbus Municipal Separate School Dist.,* 329 F.Supp. 706 (N.D. Miss., 1971), aff'd, 462 F.2d 1112 (CA5, 1972); *Williams v. Kimbrough,* 295 F.Supp. 578, 585 (W.D.La., 1969); see *Keyes v. School Dist. No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548, 563–64 (1973) (dictum).

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings. Costs are taxed to appellees.