488 F.Supp. 75 (1980)
Warren G. COUSIN, Plaintiff,
v.
BOARD OF TRUSTEES OF the HOUSTON MUNICIPAL SEPARATE SCHOOL DISTRICT, Margaret Peel, Jahu Blissard, Billy Martin, Joe Stone and Hugh Vickory, Individually and as Members of the Board of Trustees of the Houston Municipal Separate School District, Defendants.
No. EC 77-92.
United States District Court, N. D. Mississippi, E. D.
January 14, 1980.
*76 Kenneth Mayfield, Tupelo, Miss., for plaintiff.
Armis Hawkins, Houston, Miss., for defendants.

MEMORANDUM OF DECISION
ORMA R. SMITH, District Judge.
In this action, Warren G. Cousin (hereafter "Cousin"), a resident and citizen of Houston, Chickasaw County, Mississippi, sues the Houston Municipal Separate School District, the members of its Board of Trustees, and the school Superintendent.[1] This memorandum of decision will include the court's findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P. The action was submitted to the court at a non-jury trial held in Aberdeen, Mississippi, on November 26, 27, and 28, 1979. The parties have submitted proposed findings of fact and conclusions of law. The matter is now ripe for the court's decision.
Plaintiff is a black person and charges by his complaint and evidence introduced at trial, that defendants discriminated against him on the basis of his race with regard to employment and promotion within the district.
The evidence reflects that for the school year 1969-70, the last year in which the district operated separate schools for the races, at the district's predominately black school, the faculty consisted of 29 teachers, one white and 28 black teachers. During this school year, the other schools of the district were predominately white, with a combined faculty of 70; 69 of which were white teachers and one black teacher. The *77 percentage of teachers in the district were 70.7% white and 29.3% black.
For the school year 1971-72, there were a total of 94 teachers in the district. Of these, 27 were black, 66 were white, and one was a Spanish American. During the year, four black teachers and 15 white teachers were employed. The new teachers brought into the system for the year, as a group, consisted of 21% black and 79% white.
For the school year 1972-73, the district employed 109 teachers. There were 28 black teachers, 80 white teachers and one was Spanish American. During the year, the district hired four black teachers and 23 white teachers. The composition of the faculty for 1972-73 was 26% black and 74% white. The teachers brought into the district during the year consisted of 15% black and 85% white teachers.
During the school year 1973-74, the district employed 97 teachers, of which 25 were black and 71 white. There was one Spanish American. The percentages were 26% black and 74% white. During the year, 14 new teachers were hired, one was a black teacher and 13 were white teachers.
During the school year 1974-75, the district employed 101 teachers. There were 25 black teachers, 75 white teachers and one Spanish American. The percentages were 25% black and 75% white. During the year, the district hired eight new teachers. All of these were white.
For the 1975-76 school year, the district employed 99 teachers. Twenty four of these were black teachers, 74 were white and one was Spanish American. During the year, the district hired 10 new teachers, one of these was black and nine were white. The new teachers constituted 10% black and 90% white. For the entire year, the faculty percentages as to race, were 24% black and 76% white.
During the school year 1976-77, the district employed 95 teachers. Of these teachers, 23 were black, 71 were white, and one was Spanish American. There were eight new teachers brought into the district for the year and all of these were members of the white race. The composition of the faculty for the 1976-77 school year was 24% black and 76% white.
During the 1977-78 school year, the district employed 97 teachers. Twenty-two of these teachers were members of the black race and 75 were white teachers. During the year, the school district hired 11 new teachers of which 10 were white and one was black. The composition of the faculty for the year 1977-78 was 77% white and 23% black.
The school district during the year 1978-79 employed 97 teachers of which 77 were white and 20 were black. During that year, 21 teachers were brought into the school district of which 19 were white and two were black. Ten percent (10%) of the new teachers were black and 90% were white. The composition of the faculty for 1978-79 was 79% white and 21% black.
For the school year 1979-80, the school district employed 100 teachers of which 79 were white and 21 were black, thus giving a percentage of 79% white and 21% black. Sixteen new teachers were brought into the district for this year. Fifteen of these teachers were members of the white race. One teacher was a member of the black race.
The summary of General Characteristics for the State of Mississippi, as shown by the 1970 Census, reflects that of all persons making up the population in Chickasaw County, Mississippi, as of 1970, 35% were members of the negro, or black race.
It is against this background of statistical information, that plaintiff presents his individual claim of racial discrimination by the district during and after the period of his employment.
Cousin contends that upon the integration of the schools he was demoted from the position of principal to that of assistant principal in violation of the Singleton[2] provisions *78 incorporated in this court's order in V. O. Taylor v. Houston Municipal Separate School District, No. EC 70-6-S, directing the implementation of a plan proposed by the school district to supplant the segregated system of schools with a unitary system.
Cousin complains additionally that the district discriminated against him because of his race when the district eliminated the position of "assistant principal" in the schools and relegated him to a teacher's position on its faculty, at a much lower salary.
The contentions presented for the court's consideration may be well divided into three categories: (1) The Singleton claim; (2) the elimination of the assistant principal's position; and (3) the transfer of Cousin to a teacher's position.

COUSIN'S SINGLETON CLAIM
Prior to 1970, defendant school district operated a system which was essentially segregated. The only attempt to desegregate the schools had been the adoption of the "Freedom of Choice Plan", which had not been successful.
Prior to the 1969-70 school year, Cousin was the principal of an attendance center consisting of grades 1 through 12 which constituted a part of the Chickasaw County School District. In the summer of 1969 pursuant to an agreement between the Chickasaw County School District and defendant Houston Municipal Separate School District, the latter district was enlarged geographically and the said attendance center became a part of the defendant district.
For the 1969-70 school year, Cousin was retained as principal of the attendance center.
For the school year 1969-70, there were three schools in the district. The school of which Cousin was principal housed all grades, 1 through 12, and the student body and faculty were predominatly black. The other "Houston Schools" were the Elementary School and the High School. The faculty and student body of each school were predominatly white.
The defendant school district for the school year 1969-70, was operating a dual school system. Cousin and twenty-five other persons filed a complaint in this court on February 6, 1970, against the school district, its trustees and superintendent, seeking an injunction requiring the district to convert to a unitary system. V. O. Taylor, et al. v. Houston Municipal Separate School District, et al., supra. The court granted the relief requested and directed that the school board place into effect, a plan which would effectively remove all vestiges of a segregated system and replace it with a unitary system wherein race would not be a consideration in school management or operation.
The United States Court of Appeals for the Fifth Circuit on appeal of the case, upheld the court's action in granting injunctive relief, Taylor, et al. v. Houston Municipal Separate School District, et al., 444 F.2d 118 (5th Cir. 1971). In Taylor, the court held:
The injunction was not, as appellants urge, a penalty visited upon them. The District Judge was under a duty to see that the plan was given judicial sanction, if not by a consent decree then by the court's own decree, and to see that not only did the plan promise to end the dual system in September, 1970, but that in actuality it did so. He did not abuse his discretion by entering the injunction, and would have erred had he not done so.
Counsel for the parties represent to this court that there are not involved in the case any of the issues embraced in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, and that the system is unitary.
It is ordered that the judgment of the District Court is affirmed. The cause is remanded to the District Court with instructions to determine if the system is unitary and if so to enter a final order terminating the case.
Pursuant to the mandate of the Court of Appeals, this court held an evidentiary *79 hearing to determine whether there had been accomplished the conversion of the schools of the school district from segregated to unitary schools.
The plaintiffs in Taylor, supra, filed objections to the granting of unitary status to the defendant school district. One of the objections pertained to the personal complaint of Cousin, plaintiff herein. The objections filed, contained allegations and sought relief on the personal complaint of Cousin as follows:
Plaintiffs would further show that Defendants in converting from a dual school system have in violation of this Court's order of August 26, 1971, demoted the following teachers:
1.) Mr. Warren G. Cousin, Black, the former principal of the Black high school before desegregation with twenty (20) years experience as a teacher and administrator has been relegated to a position of less responsibility. He is currently serving as assistant principal of Houston High School. He teachers two (2) classes in World History; has two (2) study periods; three (3) hours duty in the office with virtually no supervisory powers nor administrative responsibility as an assistant principal.
. . . . .
CONCLUSION
WHEREFORE, Plaintiffs pray that this Court:
. . . . .
f). Enjoin Defendants to immediately reinstate and re-employ all of the teachers named in this Motion for the scholastic year 1971-72 in the teaching station and at the salary level for which they are entitled; and . . ..
After a two-day trial on December 6 and 17, 1971, the court overruled the objections and entered an order which provided:
After considering all of the same and argument of counsel, the court, in an oral opinion rendered from the bench, determined that defendant School District is presently operating in its district a unitary system of schools. It is, therefore, on such findings and pursuant to said oral opinion.
ORDERED AND ADJUDGED:
(1) That the school system currently operated by defendant School District is a unitary system of schools;
(2) That defendants' Motion to Dismiss shall be and the same hereby is sustained;
(3) That this action shall be and the same hereby is finally dismissed and terminated on the docket of this court; and
(4) That defendants shall be and they hereby are taxed with the costs of this action, to be assessed by the clerk of the court in due course.
The file in Taylor reflects also that Cousin and some of the other plaintiffs dismissed their personal claims in the action.
The court is of the opinion that Cousin cannot prosecute a cause of action herein which has as its basis, the rights of a Singleton teacher. This is true for several reasons.
First. Cousin is bound by the court's final judgment in Taylor and is now estopped to raise again the issue of his alleged discriminatory demotion from principal to assistant principal during the progress of desegregation of the school district.
Second. The claim of racial discrimination in his demotion from principal to assistant principal occurred when he was assigned by the school district to the position of assistant principal prior to the beginning of the 1970-71 school year. The action sub judice was not filed until 1977, more than six years after the accrual of the cause of action. The Mississippi six-year statute of limitations is applicable, and bars any action by Cousin growing out of the alleged discriminatory demotion. Walton v. Utility Products, Inc., 424 F.Supp. 1145 (N.D.Miss.1976); Heath v. Baldwin, 447 F.Supp. 495 (N.D.Miss.1977). Mississippi Code 1972, Annotated, § 15-1-49 provides:
All actions for which no other period of limitation is prescribed shall be commenced within six years next after the *80 cause of such action accrued, and not after.
Third. The Singleton provisions do not apply to Cousin's claims premised upon the conduct of the defendant school district after the district became unitary. The provisions apply only during the progress of desegregation activities. Lee v. Pickens Cty. Sch. System, 563 F.2d 143 (5th Cir. 1977); Pickens v. Okolona Municipal Separate Sch. Dist., 527 F.2d 358 (5th Cir. 1976); Ayers v. Western Line Consol. Sch. Dist., 555 F.2d 1309 (5th Cir. 1977); reh. den. 564 F.2d 97 and Western Line Consol. School Dist. v. Givhan, 564 F.2d 98 cert. gr. 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 799, vac. 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), on remand 592 F.2d 280.

COUSIN'S NON-SINGLETON CLAIMS

A. The Elimination of the Position of Assistant Principal.
Cousin served as assistant principal of the Houston High School for the period beginning with the 1970-71 school year and ending with the 1974-75 school year. Beginning with the 1975-76 school year, the assistant principal's positions in the schools of the district were eliminated from the system. Cousin was employed for the 1975-76 school year as a teacher of social studies in the middle school (grades 7 through 9). This employment continues with the exception that as of the 1978-79 school year, Cousin has been assigned to teach Special Education at a higher salary.
During the period under consideration, the district suffered the loss by fire of its high school building. The funding of the construction of a new building through the issuance and sale of district bonds, met with stern resistance from the qualified electors of the district. Several bond elections were held, with the school officials adopting new measures each time to operate the school as economically as possible and reduce the costs of the new structure.
The school officials did not believe the office of assistant principal was essential to a successful operation of the school. Several thousand dollars could be eliminated from the school budget by eliminating this position in each school.
The court finds that race did not play any part in the decision of the school authorities to eliminate the position of assistant principal in the high school, the position then held by Cousin. The matter was one over which the school authorities should exercise their own good judgment. Cousin has no right to complain, unless the action was taken to effect the removal of Cousin as a black assistant principal. The court holds that this was not the case.
Cousin contends, however, that upon the elimination of the position held by him, he should have been promoted to principal of one of the schools. This was not done and Cousin charges that the district rejected him for a principalship because of his race.
The school district contends that Cousin was not selected as a principal on this occasion after the elimination of the position of assistant principal because the applicants selected were better qualified for the position than Cousin.
Cousin had the burden of proving by the preponderance of the evidence that on each occasion, being a member of a minority group protected by Title VII, he applied for the position and was qualified to perform the duties which the position required; that despite his qualifications, he was rejected; and that after his rejection, the position remained open, and the district continued to seek applicants among persons having his qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Burdine v. Texas Dept. of Community Affairs, 608 F.2d 563 (5th Cir. 1979).
In the context of this case, the court's decision must rest on whether the individuals selected as principals were in fact better qualified for the position than Cousin. The court holds that the burden of proof is cast upon the district to prove by a preponderance of the evidence that Cousin was not selected as a principal of one of its schools because he was not as well qualified *81 as the ones who were selected. McDonnell Douglas v. Green, supra; East v. Romine, Inc., 518 F.2d 332 (5th Cir. 1975); Burdine v. Texas Dept. of Community Affairs, supra.
The question is: Has the district met this burden by the evidence submitted to the court?

B. The 1975-1976 Opening for Principal.
The position of assistant principal in the high school was eliminated at the close of the 1974-75 school year. At that time, there was an opening in the principal's positions at the high school. Cousin was not offered the position. Cousin was assigned to a teaching position (social studies) in the middle school (grades 7 through 9). Cousin continued to be employed as a teacher in the middle school. For the 1978-79 school year, Cousin was transferred from a teacher of social studies to Special Education Teacher, in which position he now earns a salary of $13,660.
R. L. Grimes, a member of the white race, was principal of the elementary school during the 1970-71 school year when court-ordered desegregation became effective. After desegregation of the district, Grimes was retained as principal of the elementary school. For the 1972-73 school year, Grimes also served as principal of the middle school in addition to being principal of the elementary school. For the school year 1973-74, Glen Chisolm was made principal of the middle school.
When the principalship of the high school became vacant for the 1975-76 school year because of the resignation of the principal, Grimes was appointed to that position. He retained the principalship of the elementary school.
Cousin contends that he was passed over in the selection of a school principal and was not elected because of his race. The school district contends that race was not a factor in the rejection of Cousin and the appointment of Grimes; but, on the other hand, Grimes was the better qualified of the two, and the appointment was based solely upon merit.
There was some evidence introduced by the district that Cousin indicated to the school superintendent that he was not interested in the position of high school principal, but in the principalship of the middle school. Glen Chisolm was the middle school principal for the 1975-76 school year. The middle school principalship was not vacant for that school year. The position of principal at the elementary school was not vacated by Grimes for the 1975-76 school session. Charles Parham was retained in the elementary school as assistant principal. Grimes remained the elementary principal for that year, while also serving as high school principal.
There was also some evidence that Grimes, because of the certification held by him could not serve as high school principal, unless he also held the position of principal of the elementary school.
When all the evidence bearing on the subject has been carefully considered, the court holds that the school district and its officials were aware of the fact that Cousin was an applicant for a position of principal in the school district; but that he preferred the principalship of the middle school as opposed to that of the high school.
The evidence reflects that Grimes served as principal of the elementary school for a period of time before integration, and continued in that position after the district's plan for integrating its school was approved and implemented.
The superintendent of the schools, D. B. Blanton, served in that position from July 1, 1965, until December 1977. Blanton worked with Cousin and Grimes for most of this period and was well situated to judge the capabilities of each. Blanton testified that he knew Cousin did not cherish the principalship in the high school but preferred the position in the middle school. After a consideration of all factors, weighing one against the other, Blanton concluded that Grimes was more qualified than Cousin and that his selection would serve the best interest of the district. A decision such as this cannot be lightly overturned by the court. School officials are in a much *82 better position than the court to make personnel decisions which effect the day-by-day operation of the schools. Unless the decision is influenced by the race of those involved, the court should not interfere.
The court, upon a consideration of all the evidence, holds that Cousin's rejection and Grimes acceptance was not motivated by the race of either applicant.
There was a vacancy in the principal's position in the middle school for the 1977-78 school year, created by the resignation of principal Chisolm. Gerald Hegan, a member of the white race, was the successful applicant. Cousin was considered for the position by Superintendent Blanton but was rejected in favor of Hegan.
Hegan came to the district as a drug education specialist for the school year 1975-76 and was retained by the district for the next year. Hegan made application for the principalship of the middle school on February 2, 1977. Cousin, who was a teacher on the faculty of the middle school, renewed his April 8, 1975, application for a principalship in the district, by writing a letter to Blanton on January 27, 1977, requesting consideration of the 1975 application as one for the principalship of the middle school vacancy.
Blanton was assisted by the school's assistant superintendent Carl Lowery, in making the selection. Hegan and Cousin were requested by Blanton to go through the Assessment Center operated by the Bureau of School Services at the University of Mississippi, under the guidance of Dr. Roscoe A. Boyer.
Hegan and Cousin participated in the Assessment Center at West Point, Mississippi, on March 7, 1977. Hegan's ratings on the tests were much higher than those of Cousin. Cousin offered as an explanation of his low score that a large portion of the tests involved the reading of material, and that he did not have the use of his eyeglasses which he had inadvertently left at his residence in Houston.
Dr. Boyer, the director of the center, testified that the purpose of the center was to assist school districts in locating qualified people for administrative work in the schools. The group of assessors working at the center during the participation of Cousin and Hegan was biracial, composed of two blacks and five white educators. The tests given by the center have not been validated to the extent that they have been shown to correctly predict the performance of an individual participating in the program. The results, however, enabled the superintendent, Blanton, who had the responsibility of making the selection, to approach the decision with pertinent information on both applicants. Blanton testified that he did not rely alone on the outcome of the center's evaluation of the two applicants, but considered the evaluations along with all other pertinent factors, i. e., personal acquaintance of each applicant; also, the experience, training, education and prior performance of each.
Based upon the factors above-mentioned, Blanton testified that he felt Hegan better qualified for the position than Cousin, which determination was shared by the Assistant Superintendent; that he was duty bound to select the best qualified individual; that the selection was made on that basis, and that race did not influence the selection in any way.
The court had the opportunity of observing the witnesses who were presented by the parties, and concludes that the rejection of Cousin for the principalship of the middle school for the school year 1977-78 was not motivated in any respect because of the race of Cousin.

CONCLUSION
For the reasons given above, the court concludes that Cousin is not entitled to any relief in the action sub judice.
NOTES
[1] The defendants are herein referred to collectively as "the district".
[2] Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970), rev'd in part sub nom. Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970).