Mrs. Vella WRIGHT and Miss Saora Myers, Plaintiffs-Appellees,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT, Defendant-Appellant.

No. 76–1017.

United States Court of Appeals, Fifth Circuit.

March 27, 1978.

Kelly Frels, Charles E. DeWitt, Jr., Houston, Tex., for defendant-appellant.

Larry Watts, Houston, Tex., for plaintiffs-appellees.

Before WISDOM and GEE, Circuit Judges, and VAN PELT,* District Judge.

GEE, Circuit Judge:

■ This cause presents a single, dispositive issue. It is whether the *Singleton*[1]

---

* Senior District Judge of the District of Nebraska, sitting by designation.

1. In *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970), we required, among other things:

If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards

requirement—that nonracial objective criteria be developed and employed in selecting among the staff of a given school district those of its professional staff who are to be demoted or dismissed in the event of a general reduction in force occasioned by desegregation—applies even though the desegregation process does not *result* in such a reduction in force. The district court concluded that *Singleton* required the development and system-wide application of such criteria prior to *any* dismissals of teachers by school systems in the process of desegregation, even though, in the particular system concerned, that process occasioned no such overall reduction in professional staff. In light of several recent decisions of which the trial court did not have the benefit at the time of its decision and of the principle that rules do not run beyond the reasons which occasion them, we disagree.

■ Plaintiffs are black teachers who were not rehired at the end of the 1970–71 school term by the Houston Independent School District. There is considerable evidence, brought forward though it was excluded by the trial court, that plaintiffs were not effective teachers and were discharged for this reason. Plaintiffs urge, however, correctly we think, that if *Singleton* applies here such evidence was properly excluded. Something more than mere ineffectiveness is required to support a discharge without compliance with *Singleton* requirements in cases where *Singleton* applies. *See Ayers v. Western Line Consolidated School District*, 555 F.2d 1309 (5th Cir. 1977); *United States v. Coffeeville Consolidated School District*, 513 F.2d 244 (5th Cir. 1975); *Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974); *but cf. McLaurin v. Columbia Municipal Separate School District*, 478 F.2d 348 (5th Cir. 1973).

■ We therefore turn to the dispositive issue: does *Singleton* apply? The law of the question is now clear that it is a desegregation-related general reduction in force

from among all the staff of the school district. . . .

Prior to such a reduction, the school board will develop or require the development of

that triggers *Singleton's* application. Its criteria found their classic and clearest application where dual school systems were required to be abolished. In such cases it often transpired that schools were closed and that consequently fewer professional positions—especially supervisory positions—were available to be filled by the formerly segregated faculties. *See, e. g., Bassett v. Atlanta Independent School District*, 485 F.2d 1268 (5th Cir. 1973) (five principal positions reduced to two). Our *Singleton* criteria were a specific remedy designed to insure that where "transition from a dual to a unitary system . . . results in a reduction of personnel . . . blacks did not feel a disproportionate effect of this reduction . . . ." *Lee v. Pickens County School System*, 563 F.2d 143, 145 (5th Cir. 1977). And recent decisions demonstrate that where the demotion or discharge of plaintiff is not occasioned by such a reduction, *Singleton* criteria do not come into play even though the school system is still in the desegregation process.

In *Ayers v. Western Line Consolidated School District, supra,* for example, plaintiff Hodges was discharged by the school system at a time when it had not developed objective nonracial criteria and was still engaged in the desegregation process. We nevertheless noted, in language controlling here:

We agree with the district court that the school district was still in the process of becoming a unitary system in 1972, that is, it was still in a *Singleton* situation. *See, e. g., United States v. Coffeeville Consolidated School District*, 513 F.2d 244, 247 (5th Cir. 1975); *United States v. Texas*, 509 F.2d 192, 193 (5th Cir. 1975). By its own terms, however, *Singleton* applies only "[i]f there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff." Our recent cases establish that not only an arithmetic reduction is required, but a reduction related to de-

nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted.
419 F.2d at 1218.

segregation. *Hardy v. Porter*, 546 F.2d 1165, 1167–1168 (5th Cir. 1977) (former principal lost his *Singleton* protection when he left the system for "reasons unrelated to the desegregation process"); *Lee v. Chambers County Board of Education*, 533 F.2d 132, 135 (5th Cir. 1976); *Pickens v. Okolona Municipal Separate School District*, 527 F.2d 358, 361, 362 & n. 3 (5th Cir. 1976). As we said in *Lee, supra* :

> *Singleton* was designed to ensure that the transition from a dual to a unitary system, with all the concomitant logistical problems, would not occasion unfair treatment of black teachers and staff members. Oliver's demotion from the position of Assistant Attendance Supervisor to that of classroom teacher was not a result of the desegregation of Chambers County schools, but rather was necessitated by termination of the Title I funds that paid his salary. A plaintiff seeking *Singleton* protection has the burden of proving the applicability of its terms. *Cf. Hardy v. Porter, supra; Lee v. Chambers County Board of Education, supra.* There is no evidence in this record that the reduction in counselor positions was related to desegregation, and the court made no such finding. Since the "desegregation-relatedness" aspect of *Singleton* may not have been entirely clear when the case was tried, it is appropriate to reverse and remand for further consideration of why the district changed its counselor employment scheme. If that change was not related to desegregation, *Singleton* would not apply to Hodges regardless of any reduction in the overall faculty related to desegregation, because elimination of *her* position would not have been so related. *Hardy v. Porter, supra.*

555 F.2d at 1321 (emphasis in original).

As in *Ayers*, so here. The district court made no finding whether or not plaintiffs were discharged as a result of a desegregation-related reduction in force. This failure probably resulted from an apparent conclusion of the court, noted above, that *Singleton* applies even in the absence of such a reduction. Indeed, it is arguable that the trial judge found there was no such reduction. In his opinion, referring to the decision in *Thompson v. Madison County Board of Education*, 476 F.2d 676 (5th Cir. 1973), *rev'd on remand*, 496 F.2d 682 (5th Cir. 1974), he remarked, "In Madison County, as in Houston, there was no need to reduce teachers." And such statistics as the record contains tend strongly to indicate that no such reduction occasioned plaintiffs' nonretention.

In October, the commencement of the 1970 academic year, the district employed 10,256 professional staff in the approximate ratio of 35:65 black to white. One year later, the comparable figure was 10,826—an increase of 570. Of these 570 new staff, 381, or 68%, were black. It is true that during the academic year the district experienced about a 20% turnover in professional staff. The district, however, in undisputed testimony, assigns the great body of this turnover to deaths, voluntary resignations and leaves of absence. Such testimony also established that during the 1970–71 school year only eight teachers were involuntarily terminated, three black and five white. On our recent decisions noted, such figures present a very dubious case indeed for the applicability of *Singleton*.

Nevertheless, since the district court did not focus upon and made no square, deliberate finding on the question whether plaintiffs' nonretention *r*esulted from a desegregation-related general reduction in professional staff—instead concerning itself chiefly with its conclusion that none was required to trigger *Singleton*—we are reluctant to address this dispositive issue for the first time on appeal. And we are the more reluctant to do so since the plaintiffs' conventional section 1983 claim of discharge on racial grounds seems somehow to have been lost in the process of the district court's invocation of *Singleton* on a basis which hindsight, at any rate, plainly reveals to have been erroneous.

We are therefore persuaded, despite our reluctance to extend further the course of this lengthy case, that justice requires it. The judgment of the district court is there-

fore vacated and the cause remanded to it for further proceedings consistent herewith.

VACATED AND REMANDED.