Johnnie PEGUES, Plaintiff–Appellant,

v.

MOREHOUSE PARISH SCHOOL BOARD et al.,
Defendants–Appellees.

No. 78–3757.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1980.

**1280**

R. James Kellogg, New Orleans, La., for plaintiff–appellant.

Stephen J. Katz, Bastrop, La., for defendants–appellees.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

1. A white coach has again filled the position during the pendency of this appeal.

HENDERSON, Circuit Judge:

The appellant, Johnnie Pegues, filed this action for declaratory and injunctive relief in the United States District Court for the Western District of Louisiana alleging violations of 42 U.S.C.A. § 1983 and noncompliance with the mandates of *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir.) (en banc), *rev'd in part sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970). The district court granted the defendant school board's motion for summary judgment, and Pegues appeals.

Pegues is a black coach and tenured teacher who has been employed by the Morehouse Parish School System since 1965. He was initially hired as the head football coach at the all–black Morehouse High School in Bastrop, Louisiana. The Bastrop schools were integrated by court order in 1969, and Pegues was assigned as an assistant football coach at the formerly all–white Bastrop High School. The school's head football coach, a white man, was retained until the end of the 1969–70 school year. At that time, and again in 1972 and 1973, a new white head football coach was hired.[1] Pegues was never offered the job of head football coach. He continued as assistant coach until the 1977–78 school year, at which time he was named head track coach. He filed this action on March 3, 1978, seeking the head football coach position and back pay.

### The Section 1983 Claim

As his first basis for relief, Pegues alleges that the school board demoted him and repeatedly denied him promotion for racially discriminatory reasons in contravention of 42 U.S.C.A. § 1983. The district court found this claim to be time–barred, and we agree.

In § 1983 actions, the applicable statute of limitations is that which the state would apply if the suit had been brought in

its courts. *Kissinger v. Foti*, 544 F.2d 1257 (5th Cir. 1977). The district court correctly applied the one–year limitation period prescribed by La.Civ.Code, Art. 3536 for actions resulting from "offenses or quasi–offenses." The implementation of this statute is in accord with this court's decision in *Page v. U.S. Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). There, we held that Art. 3536 governed an action under 42 U.S.C.A. § 1981 asserting racial discrimination in employment and seeking back pay, reasoning that Louisiana law would characterize the action as one sounding in tort. *See also Heyn v. Board of Supervisors of Louisiana State University*, 417 F.Supp. 603 (E.D.La.1976) (Art. 3536 held to control in a § 1983 action brought by a teacher against a university for wrongful denial of promotion.) Pegues filed his complaint nine years after his initial demotion, eight years after he was first passed over for promotion, and some five years after the last alleged discriminatory turnover of the head football coach position. Hence, the § 1983 action is untimely.

Pegues cites two alternative statutes of limitations in an attempt to preserve his claim. One is La.Civ.Code, Art. 3538, which provides a three–year limitation period for actions for salaries brought by "teachers of the sciences." Yet, even if Pegues' coaching assignment brings him within the admittedly archaic phrase "teacher of sciences," the three–year period is of no aid to him here. The other statute is La.Civ.Code, Art. 3544, which establishes a ten–year prescriptive period for actions not specifically covered in other statutes. Pegues maintains that the application of Art. 3544 is mandated by the decision of the Louisiana Court of Appeals in *McCoy v. Tangipahoa Parish School Board*, 308 So.2d 382 (La.App.), *writ denied*, 310 So.2d 856 (1975). *McCoy*, however, concerned an action in which a tenured principal sought reinstatement after he was demoted to classroom teacher in violation of

his contractual rights under Louisiana tenure law. Pegues, although a tenured teacher, does not have tenure as a coach. Moreover, even if he had sued for violation of his rights as a tenured teacher, which he did not, his claim most likely would have been classified under the provisions of Art. 3538, and not the special exception for principals which was employed in *McCoy*. Finally, we note that the use of both Art. 3538 and Art. 3544 was expressly rejected in *Page, supra*. Thus, we conclude that the district court correctly applied Art. 3536, and that Pegues is precluded from pursuing his § 1983 cause of action.

### The Singleton Claim

The more difficult question is whether the district court correctly entered summary judgment against Pegues on his *Singleton* claim. The *Singleton* entitlements are equitable in nature, *Hardy v. Porter*, 546 F.2d 1165, 1168 (5th Cir. 1977), and, in pertinent part, are enunciated as follows:

> If there is to be a reduction in the number of principals, teachers, teacher–aides, or other professional staff employed by the school district which will result in dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non–discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

*Singleton*, 419 F.2d at 1218.

██ The district court determined that Pegues was, in fact, "demoted" for purposes of *Singleton* protection.[2] This finding is

---

2. In this regard, the court stated:
   Although plaintiff apparently received no cut in pay, the change from head coach to assistant coach would appear to constitute a "de-

   motion" because of the lessened responsibility, despite the alleged difference in size between the two high schools. *Singleton, supra*, 419 F.2d at 1218. For the purposes of

not seriously challenged. The appellees do argue on appeal that this case falls outside the ambit of *Singleton* because Pegues, although he did discuss the matter with his superiors, never formally applied for the head coach position. However, *Singleton* does not explicitly require this affirmative step on the part of the displaced staff member; rather, he is entitled to special treatment unless and until he has failed to *accept an offer* to fill a vacancy. The school system must give dismissed or demoted personnel "the right of first refusal" when subsequent staff vacancies occur. *Hardy v. Porter*, 546 F.2d at 1167.

The district court entered summary judgment against Pegues not because *Singleton* is inapplicable to his situation, but because he delayed too long in filing his suit. Indeed, the motion for summary judgment, as it related to the *Singleton* problem, was grounded in the doctrine of laches. As mentioned earlier, Pegues filed this action nine years after his demotion, eight years after the first coaching change, and five years after the replacement which, for our present purposes, was the most recent. Nevertheless, the district court specifically disavowed any resolution of the laches issue. Rather, it held the claim to be barred by mere "passage of time."[3]

We have been cited no authority, nor do we know of any, which supports this basis for denying *Singleton* relief.[4] The district

court reasoned that to allow Pegues to enforce the *Singleton* requirements at this time would be contrary to "the principle that rules do not run beyond the reasons which occasion them," *Wright v. Houston Independent School District*, 569 F.2d 1383, 1384 (5th Cir. 1978). *Singleton* entitlements are "aspects of equitable remedies, designed by this court under its general equitable power to fashion relief for constitutional violations (in this case, maintenance of a segregated, dual school system) in accordance with principles of fairness and with a minimum of hardship to persons affected by a large scale, court–ordered social change." *Hardy v. Porter*, 546 F.2d at 1168. In essence, *Singleton* relieved "a distinct class of persons [from] the burden of proving individual acts of discrimination...." R., 148. However, in the opinion of the district court, when a school system has been functioning smoothly on a unitary basis for several years, the weight of the equities shifts. At this point, the implementation of *Singleton* remedies would create more hardships than it would alleviate. Indeed, in the district court's words, it would "revive the very antagonisms which all parties have sought so diligently to dissipate; and this, without any finding of discrimination...." R., 147.

Although we do not totally disagree with this analysis, we believe that the more traditional laches inquiry is the proper

this motion, it is assumed that there was an overall reduction in the number of professional staff members employed by defendant in 1969–70, as a result of the demise of the dual school system. Thus, plaintiff was entitled to the protections of *Singleton* at the time of his demotion.
R., 147. *See also Lee v. Macon County Bd. of Ed.*, 453 F.2d 1104 (5th Cir. 1971). *Cf. Lee v. Walker County School System*, 594 F.2d 156 (5th Cir. 1979) (where former black principal was reassigned as an administrative assistant at the county's largest high school, position was commensurate with his former position at a school one–half that size because the responsibilities and pay were comparable).

3. Mere lapse of time, of course, is not sufficient to constitute laches; inexcusable delay and resulting undue prejudice are the essential elements of the defense. *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98 (5th Cir. 1978);

*Weiszmann v. Dist. Eng'r.*, 526 F.2d 1302 (5th Cir. 1976); *Am. Marine Corp. v. Citizens Cas. Co. v. N.Y.*, 447 F.2d 1328 (5th Cir. 1971).

4. Some distinguishing remarks may be helpful here. In *Lee v. Walker County School Sys.*, n. 2, *supra*, we noted that "[t]he objective criteria requirement of Singleton does not apply ... after a formerly segregated school system 'ha[s] for several years operated as a unitary system.'" 594 F.2d at 158 (citations omitted). That statement was made in reference to a situation in which the staff displacement (nonrenewals of teachers' contracts) occurred several years after desegregation. Here, the district court explicitly found, for purposes of the summary judgment motion, that Pegues' demotion was the result of an overall desegregation–related reduction in the number of school staff members.

manner in which to deal with the tardiness of this suit. As of yet, the district court has made no specific determination that Pegues is guilty of inequitable conduct. Instead, its decision was based on the mere fact of Pegues' prolonged inaction and the intervening change in circumstances in the school system. Whether this delay is inexcusable, and whether it has resulted in an actual prejudicial change in the appellees' position,[5] are the precise factual questions to be decided within the laches framework. These are also issues which we cannot resolve on the existing record. As a general rule, the laches determination should be made by the trial court in the first instance. *Franks v. Bowman Transportation Co.*, 495 F.2d 398, 406 (5th Cir. 1974); *Kosty v. Lewis*, 319 F.2d 744, 749 (D.C.Cir.1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). Indeed, the district court specifically noted in its memorandum ruling that "[w]hether the delay is excusable, and whether prejudice has resulted to defendants is the subject of dispute." R., p. 149. Consequently, we have no alternative but to remand the laches issue for resolution by the district court. *Accord, Franks v. Bowman Transportation Co.*, 495 F.2d at 406; *American Marine Corp. v. Citizens Casualty Co. of New York*, 447 F.2d 1328, 1330 (5th Cir. 1971).

AFFIRMED in part; REVERSED and REMANDED in part.

5. Prejudice, in the laches context, means disadvantage in asserting and establishing a claimed right or defense, or other damage caused by detrimental reliance on the plaintiff's conduct.

*Law v. Royal Palm Beach Colony, Inc.*, n. 3, *supra*; *Esso Intern., Inc. v. S.S. Captain John*, 443 F.2d 1144 (5th Cir. 1971).