**Hurie JONES, Plaintiff-Appellant,**

v.

**ORLEANS PARISH SCHOOL BOARD,
Defendant-Appellee.**

No. 81-3204.

United States Court of Appeals,
Fifth Circuit.

June 21, 1982.

Hurie Jones, pro se.

Franklin V. Endom, Jr., Charles T. Curtis, Jr., New Orleans, La., for defendant-appellee.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Hurie Jones, a black male, was employed as a school teacher by the Orleans Parish School Board in 1966. He was granted tenure in 1969. At his request, he was given a leave of absence without pay from August, 1972, until January, 1974. He returned to teaching until June, 1974, when he requested another leave of absence. The School Board granted Jones' request for

leave to expire on May 30, 1975. During this time, Jones was attending law school.

When he left the school system on leave in June, 1974, Jones was told that he had to notify the School Board by June 1, 1975 of whether or not he intended to return to teaching for the 1975–76 school year. On May 30, 1975, Jones wrote to the School Board by certified mail expressing his "irrevocable intention" to return to teaching for the 1975–76 term. On June 4, 1975, the School Board wrote to Jones saying that in order to be reinstated he had to complete and return an enclosed form and then bring in person a medical certificate to the Division of Personnel so that he could be interviewed regarding his return.

Jones completed and returned the form on June 9, 1975. The form provided a space for the applicant's name, his former school, address, and subject(s) taught. Because the space for the address immediately followed the space for the name of his former school, Jones gave the address of Green Middle School where he had last taught. On the bottom of the form he checked the box in front of the statement "I will return on 8/25/75."

On June 11, 1975, Jones visited his doctor and procured the requisite certificate. He testified that he took the certificate to the Division of Personnel sometime thereafter; however, the School Board had no record of receiving the certificate. On August 24, 1975, Jones again wrote to the School Board by certified mail stating that he was scheduled to return to teaching and was awaiting an assignment. He testified that when he did not receive an assignment, he called the Board several times but was unable to get any response. Jones returned to law school that fall and graduated in May, 1976. There was no further communication between Jones and the Board until the following February.

On February 2, 1976, Assistant Superintendent of Personnel, Alfred Hebeisen, wrote to Jones to inform him that he was absent without authority and therefore subject to termination. Mr. Hebeisen acknowledged receipt of Jones' June 9, 1975, letter containing the completed form and instructed Jones to supply an explanation for his absence. If an explanation was not tendered, the letter continued, Hebeisen would recommend Jones' termination to the Board. This letter was sent to 2319 Valence Street, the address of Green Middle School. This was, of course, the address supplied by Jones on the Board's form. The letter was returned to the Board by the Post Office, but the exact date of its return is unknown. Sometime thereafter, someone in Mr. Hebeisen's office attempted to contact Jones by telephone but was unable to do so. On the bottom of the returned letter of February 2 is a handwritten note which reads "Abandoned position—Efforts to contact were unsuccessful."

On February 18, 1976 Mr. Hebeisen again wrote to Jones. In this letter he informed Jones that his position at Green Middle School was terminated because he had abandoned it. This letter also was sent to the Green Middle School address. Whether the first letter had been returned by the time the second was mailed is not reflected in the record. This second letter was also returned sometime thereafter.

On March 8, 1976, the School Board approved Mr. Hebeisen's recommendation that Jones be terminated. The following day, Hebeisen wrote to Jones to inform him of this action. This letter was sent to Jones' correct address—the address at which he had been living since before his leave of absence. Hebeisen testified that he found this address in Jones' personnel file.

On March 15, 1976, Jones filed a complaint with the Equal Employment Opportunity Commission pursuant to 42 U.S.C. § 2000e–5(e) alleging that he had been discharged unlawfully on the basis of his race. He received a right-to-sue letter on May 17, 1977. On August 19, 1977, he filed the present lawsuit alleging violations of Title VII, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. The case was tried before a magistrate who made findings and recommendations. The magistrate found that Jones'

§ 1981 and § 1983[1] claims were barred by the one year statute of limitations contained in La.Civ.Code art. 3536. With respect to the Title VII claim, the magistrate found that Jones had been terminated because he had abandoned his position and that this happened routinely to white as well as black teachers. The magistrate concluded that there was no racial discrimination involved in Jones' termination, and he recommended that judgment be entered in favor of the Board on the Title VII claim. The district court accepted this recommendation and entered judgment accordingly.

In this appeal, Jones contends: (1) the court erred in applying a one year, rather than a three year, statute of limitations to the § 1981 and § 1983 claims; (2) the School Board denied him due process by terminating him without first giving him notice and an opportunity to be heard; (3) the court erred in holding that he failed to prove racial discrimination under Title VII; and (4) the School Board violated various state laws in the termination procedure.

I.  *Statute of Limitations Under §§ 1981 and 1983*

■ Because Congress did not establish a limitations period for §§ 1981 and 1983 actions, federal courts apply the state law of limitations governing analogous causes of action. *Braden v. Texas A&M University System,* 636 F.2d 90, 92 (5th Cir. 1981). To accomplish this, the court must characterize the claim as it would be characterized under

state law and then determine the state limitations period which would apply to that type of claim. *Shaw v. McCorkle,* 537 F.2d 1289, 1292 (5th Cir. 1976).

In this case, Jones presented two different claims under the two statutes. He alleged first, that he was discriminated against on the basis of his race in violation of both §§ 1981 and 1983, and second, that he was denied his right to due process in violation of § 1983. We characterize each of these claims separately and then look to Louisiana law to determine the applicable limitations period. *Whatley v. Department of Education,* 673 F.2d 873, 878 (5th Cir. 1982).

■ In *Page v. U. S. Industries, Inc.,* 556 F.2d 346, 351–52 (5th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978), we held that a § 1981 claim of racial discrimination in employment was best characterized under Louisiana law as a tort and should be governed by La.Civ.Code art. 3536's[2] one year limitations period which applies to "offenses and quasi-offenses." Because the right to be free from racial discrimination is independent of any contractual right an employee may have, we held inapplicable the three year period provided by La.Civ.Code art. 3538[3], which governs actions arising out of certain employment contractual relationships. *Accord Shelley v. Bayou Metals,* 561 F.2d 1209 (5th Cir. 1977). This same reasoning applies to a racial discrimination claim brought under § 1983.[4] *Cf. Whatley,*

---

1. Neither the magistrate's findings nor the court's judgment mentions the § 1985 claim. In his original complaint, Jones alleged § 1985 as a jurisdictional basis of his suit; however, he did not allege supporting facts. It was not until his supplemental memorandum in support of his motion for summary judgment that Jones elaborated on the § 1985 claim. There, he argued that his termination was the culmination of a conspiracy which began in 1971 when he filed a complaint with the School Board alleging discrimination on the part of a school principal. The School Board never responded to this claim, and the court never ruled on it.

2. La.Civ.Code art. 3536 provides:
    The following actions are prescribed by one year:
    \*   \*   \*   \*   \*   \*

That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi-offenses.

3. La.Civ.Code art. 3538 provides:
    The following actions are prescribed by three years:
    \*   \*   \*   \*   \*   \*
    That for the salaries of overseers, clerks, secretaries, and of teachers of the sciences who give lessons by the year or quarter.

4. Although the district court never ruled on the § 1985 claim, we find that the claim was barred by art. 3536's one year statute of limitations because Louisiana characterizes civil conspiracies as "offenses or quasi-offenses." *See*

*supra* at 878 (because the "essential nature" of the claim determines the applicable limitations period, the same period applies to substantially identical racial discrimination claims whether brought under § 1981 or § 1983—applying Georgia law) and *Braden*, 636 F.2d at 92 (applying Texas law). Therefore, the court was correct in holding that Jones' claim of racial discrimination under §§ 1981 and 1983 was time-barred.[5]

■ Jones' § 1983 claim alleging due process violations should not have been dismissed as time-barred, however. In *Pegues v. Morehouse Parish School Board*, 632 F.2d 1279 (5th Cir. 1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 844 (1981), we held that La.Civ.Code art. 3536's one year limitations period applied to a claim by a black coach who alleged that he had been demoted on the basis of his race. We concluded, however, that if he had been tenured and had sued for the violation of his rights *as a tenured teacher*, the three year limitations period of La.Civ.Code art. 3538 would have been applicable. Jones' right to due process arises out of his status as a tenured teacher, and therefore art. 3538 controls. Because Jones filed this suit less than three years after he was terminated, his due process claim is not time-barred.

### II.  *Due Process*

Jones argues that his right to due process, which is secured by the Fourteenth Amendment to the United States Constitution, was violated because the Board did not give him notice and an opportunity to be heard before he was terminated. The Board contends that Jones "abandoned" his teaching position and therefore was not entitled to notice and hearing. In the alternative, the Board argues that it fulfilled its obligations under the due process clause.

La.Civ.Code art. 2315; *Ingram v. Freeman*, 326 So.2d 565, 570 (La.App.1976), *writ denied*, 329 So.2d 755 (La.1976).

5.  We also note that Jones did not pursue the racial claims under §§ 1981 and 1983 at oral argument. Further, even it these claims had not been time-barred, res judicata or collateral

■ A public employee may claim procedural due process rights upon termination if he has a property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Property interests are not created by the due process clause; rather, they stem from independent sources such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In order to receive constitutional protection of a property interest, one must have a "claim of entitlement" to the interest. *Id.* Once it is determined that a public employee has a protected interest in continued employment, the Constitution requires that he be given notice and an opportunity to be heard prior to termination. *Gosney v. Sonora Independent School District*, 603 F.2d 522, 525 (5th Cir. 1979). Because Jones was a tenured teacher, it is clear that he had a protected interest in continued employment. *See* La. Rev.Stat. § 17:462. Therefore Jones was entitled to be heard by the Board before he was discharged if there were any issues which raised the need for a hearing.

The Board's first defense to the due process claim is that Jones "abandoned" his position by failing to comply with the reinstatement requirements and that therefore he was not entitled to notice or a hearing. In support of this contention the Board cites a Louisiana Supreme Court decision which held that the failure of a tenured teacher to return a signed contract by a specified date constituted a voluntary termination of employment and a waiver of the teacher's right to notice and a hearing under Louisiana's Teacher Tenure Law. *State ex rel. Cody v. Caldwell Parish School Board*, 215 La. 645, 41 So.2d 461 (1949).

■ Obviously, a state has the right to provide for the termination of teachers and other public employees who abandon their positions. But in the case of tenured em-

estoppel may have prevented consideration of the racial issues because the court below made findings of fact as to whether Jones was discharged on the basis of his race with respect to the Title VII claim. *See Barker v. Norman*, 651 F.2d 1107, 1130 (5th Cir. 1981).

ployees, the process of discharging employees for "abandonment" must comport with due process requirements. For example, the state may not by simply labeling some action or lack of action "abandonment" create a right to discharge a public employee as a subterfuge to defeat tenure requirements. Whether Louisiana can by law require automatic discharge of a tenured teacher who after adequate notice admittedly fails to return a signed contract by a specified date we need not here decide. But if there is any factual issue about whether the teacher did fail to meet the requirements, the teacher is entitled to notice and hearing with respect to such issue. If there is an issue as to the facts and their application to the statute, the automatic waiver of notice and hearing provided in the Louisiana Teacher Tenure Law could not be applied without running afoul of Fourteenth Amendment due process requirements. The question before us is whether the constitutional rights of Jones under the due process clause of the Fourteenth Amendment were respected by the School Board in its actions which led to his discharge for "abandoning" his teaching position.[6] The Board cannot under the contested facts of this case rely upon an automatic right to discharge without any obligations on the Board to take actions by way of communication with Jones and giving him the opportunity to be heard on disputed issues.

The Board did take actions before it discharged Jones; the question is whether they were adequate to comply with requisite due process. The Board contends that it fulfilled its obligations to the best of its ability by twice attempting to notify Jones of the pending action so that he would have an opportunity to be heard. The Board argues that it was Jones' fault that the address he gave was incorrect. Mr. Hebeisen's personnel office did all it could, the Board contends, to notify Jones. The mis-

take in the address was not realized until after both the letters had been returned, and it was as a last resort that the Board wrote to Jones at what it thought was an out-dated address. The Board argues that it took reasonable measures to contact Jones and should not be held liable because of its lack of success in doing so.

Jones contends that the Board did know or should have known that the letters of February 2 and 18 would never reach him because the address to which they were sent was one of the Parish schools. The Board ought to know the addresses of its own schools. Further, the Board had a complete personnel file on Jones which contained his correct address, yet when Mr. Hebeisen's office attempted to contact him prior to termination, that address was not located. However, when it came time to notify Jones of final termination, the correct address suddenly appeared. Jones contends that these facts prove that the Board did not do all it should have done to notify him of the pending action so that he could defend against it.

Although this evidence was presented to the district court, its conclusion that the § 1983 action was time-barred precluded resolution of the due process claim. Many of the facts bearing upon the claim were brought out at trial because they related to the Title VII race claim. The court made no factual findings or legal conclusions concerning the alleged due process violations, however. When summarizing the sequence of events leading to Jones' termination, the court merely noted the conflicting evidence and did not attempt to resolve the conflicts since that evidence was not crucial to the resolution of the Title VII claim. So we are faced with a situation where most of the relevant facts were brought out at trial, but the district court did not evaluate these facts. Nevertheless, "[f]act-finding is the basic responsibility of district courts rather than appellate courts, and ... the Court of

**6.** The Board cannot argue that Jones' alleged abandonment was the equivalent of a voluntary resignation so that the Board never actually terminated him. The Board instituted actions to have Jones terminated and his alleged aban-

donment was merely asserted as a ground for termination. Furthermore, the Board conceded that it terminated Jones by raising as a defense to the Title VII claim its contention that Jones was discharged for abandonment.

Appeals should not [resolve] in the first instance [a] factual dispute which [has] not been considered by the District Court." *Pullman-Standard v. Swint,* —— U.S. ——, ——, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). Therefore, we must remand this issue to the district court so that it may consider the evidence already adduced, as well as any additional evidence which is relevant to the issue, to determine whether Jones' right to due process was violated.

### III. The Title VII Claim

Jones argues that the district court erred in concluding that he failed to prove a claim of racial discrimination under Title VII.[7] Having reviewed the record, we conclude that the court was correct in finding that Jones "offered no evidence whatsoever which in any way remotely infers that he was discharged because of his race." The evidence showed that the Board discharged Jones because it believed that he had abandoned his job. Whether the Board was wrong in believing that Jones had abandoned his job is irrelevant to the Title VII claim as long as the belief, rather than racial animus, was the basis of the discharge. *DeAnda v. St. Joseph Hospital,* 671 F.2d 850, 854 n.6. (5th Cir. 1982).

Next, Jones argues that the court erred in refusing to admit evidence of a custom or policy of discrimination on the part of the Board as well as evidence that he was discharged in retaliation for filing a complaint with the Board against a school principal in 1971. The court permitted Jones to pursue a line of questioning concerning a custom or practice of discrimination until it became clear that the witness from whom he was attempting to elicit this evidence was unable to answer his questions. Then, the court directed Jones to move on to another subject. As to the evidence of retaliation, when Jones attempted to introduce the 1971 complaint, the court ruled that events which occurred that long ago were irrelevant. Jones did not object to this ruling nor did he explain

the relevance of this evidence to the court. We find no error in these evidentiary rulings. The court was correct in concluding that Jones did not prove his Title VII claim.

### IV. State Law Claims

Finally, Jones alleges various state law claims including breach of contract and violation of the Louisiana Teacher Tenure Laws. These claims were not pleaded in Jones' complaint nor were they mentioned in the pre-trial order. When Jones attempted to present evidence on these claims at trial, the Board objected on the grounds that the claims were not pleaded and that the pendent jurisdiction of the federal court had not been invoked. Because the state law claims were not properly presented in the court below, these issues are not before us on appeal. *Daly v. Sprague,* 675 F.2d 716 at 722 (5th Cir. 1982).

### V. Conclusion

We hold that the court below was correct in concluding that Jones' claims of racial discrimination under §§ 1981 and 1983 were time-barred by the one year limitations period of La.Civ.Code art. 3536. We find that the court erred in concluding that the § 1983 due process claim was time-barred. We remand the case to the district court for consideration on the merits of the due process claim. We affirm the court's judgment against Jones on the Title VII claim since the record contains no evidence showing that Jones was terminated on account of his race. The state law claims posed by Jones are not properly before us on this appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

7. There is no statute of limitations issue under the Title VII claim of racial discrimination.

Suit was filed three months after receipt of the right to sue letter from the EEOC.