Johnnie PEGUES, Plaintiff-Appellant,

v.

MOREHOUSE PARISH SCHOOL BOARD, et al., Defendants-Appellees.

No. 82–4329
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 10, 1983.

---

Paul Henry Kidd, Monroe, La., for plaintiff-appellant.

Rankin, Yeldell, Herring & Katz, Stephen J. Katz, Bastrop, La., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Once again we consider the complaint of Johnnie Pegues that in its implementation of a court-ordered desegregation plan, the Morehouse Parish School Board demoted him from head to assistant football coach and thereafter bypassed him in filling several head coach vacancies. On the first appeal we affirmed the district court's dismissal of Pegues' § 1983 cause of action on the basis of untimeliness, but reversed its holding that *Singleton*[1] relief was unavailable due to Pegues' delay in bringing suit. Concluding that the mere passage of time was insufficient to bar a *Singleton* claim, we remanded with instructions to consider the preclusive effect of Pegues' delay under the aegis of the traditional doctrine of laches. *Pegues v. Morehouse Parish School Board,* 632 F.2d 1279 (5th Cir.1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 844 (1981) (*Pegues* I). Following a bench trial, the district court held on remand that Pegues had failed to establish that he was entitled to *Singleton*'s reme-

dies and that, in any event, his claim was barred by laches. We affirm.

*Factual Background*

Pegues, a black male, was employed as head football coach and teacher at the all-black Morehouse High School in Bastrop, Louisiana, for five years prior to the conversion of that school to a junior high school and the transfer of its student body to Bastrop High School in compliance with a parish-wide desegregation order in 1969. Under this order, seven parish high schools, three of which had football programs, were consolidated into three high schools, each of which had a football program. Two of the head football coaches at the newly-consolidated schools were white, and one was a black who formerly served as an assistant under Pegues. Pegues was assigned to Bastrop High as assistant football coach. The white head football coach at Bastrop High resigned in 1970 and was replaced by a white. Pegues was not informed of the vacancy, was not offered the job and made no application therefor. In 1972 and again in 1973, the head football coach at Bastrop High resigned and a white replacement was hired. Pegues was informed of neither vacancy. He orally made known his desire for the head coach job at another of the parish's high schools. In 1977 Pegues was relieved of football coaching duties and was appointed head track coach at Bastrop High. The instant complaint was filed in March 1978.

After trial on remand the district court rejected Pegues' complaint, finding that since the number of head football coaching positions was not reduced by the desegregation decree, Pegues' demotion did not come within the purview of *Singleton*. Assuming, however, that the *Singleton* criteria were applicable, the district court concluded that Pegues' delay in complaining about his 1969 demotion was inexcusable and presumptively prejudicial, and that defendants had therefore sustained their burden of proving laches.

---

1. *Singleton v. Jackson Municipal Separate School District,* 419 F.2d 1211 (5th Cir.) (en banc), *rev'd in part sub nom. Carter v. West Feliciana Parish School Board,* 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 530 (1970).

### Res Judicata and the Law of the Case

Aside from a conclusional assertion that the district court erred in finding that no reduction in the relevant work force had occurred during the desegregation process, Pegues does not challenge the trial court's rejection of his *Singleton* claim. Rather, he contends for the first time on appeal that the district court was bound by principles of *res judicata* and the law of the case to adhere to the panel's determination in *Pegues I* that *Singleton* was applicable, and that his rights accruing thereunder had been violated.

It is axiomatic that an issue not raised in the trial court will not be considered on appeal unless it involves a pure question of law, and our refusal to address it would result in a miscarriage of justice. *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir.1983). Recognizing that "[t]he matter of what questions may be taken up and resolved for the first time on appeal . . . ." is committed to the discretion of the courts of appeals the Supreme Court remarked: "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt . . . or where 'injustice might otherwise result'." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Because the preclusive effect of the law of the case and *res judicata* doctrines presents a pure legal question, and being satisfied that no prejudice will accrue to the defendants, *see Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982), we exercise our discretion and address the question.

As we observed in *Loumar v. Smith*, 698 F.2d 759 (5th Cir.1983):

> The law of the case doctrine is closely related to the principle of res judicata. The latter prevents collateral attack on the result of the completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.

*Id.* at 762. *Res judicata* attaches only to a final judgment on the merits, rendering that judgment conclusive and binding upon the parties in any ensuing action. *Loumar;* 1B J. Moore and T. Currier, Moore's Federal Practice ¶ 0.404[1] (1982). By way of contrast, the law of the case concept applies to a single proceeding, and operates to foreclose re-examination of decided issues either on remand or on a subsequent appeal. *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059 (5th Cir.1981); *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659 (5th Cir. 1974). Unlike *res judicata*, the law of the case doctrine does not encompass issues presented for decision but left unanswered by the appellate court.

By definition, neither doctrine is applicable herein. The *Pegues I* court reversed the trial court's grant of summary judgment and instructed that the question of untimely filing was to be analyzed under the doctrine of laches. We did not decide whether Pegues' complaint triggered *Singleton*'s protections; we did not reach that issue. Any comment in *Pegues I* regarding the merits of Pegues' *Singleton* claim was obiter dicta. There having been no judgment on the merits rendered on the *Singleton* claim, the decision in *Pegues I* may not serve as the basis for either a *res judicata* or law of the case challenge.

### Singleton

Pegues assails the trial court's conclusion that *Singleton*'s teachings do not dictate the resolution of his claim. Pegues misperceives our holding in *Singleton*. To ensure that black school personnel were not disparately impacted by staff reductions or rearrangements occasioned by the merger of previously one-race schools, in *Singleton* we promulgated detailed standards governing employment practices during the transition from a dual to a unitary educational system. Of particular relevance to the case at bar is our mandate that dismissals and demotions may not be premised on racial or ethnic considerations and, in instances of

dismissals or demotions accomplished pursuant to objective, nondiscriminatory criteria, qualified staff members thus · displaced must be given rights of first refusal with respect to subsequent vacancies. The reinstatement preference created by *Singleton* is limited to cases where a desegregation-related reduction of school staff members has been shown. *Fort Bend Independent School District v. City of Stafford,* 651 F.2d 1133 (5th Cir.1981); *Barnes v. Jones County School District,* 544 F.2d 804 (5th Cir.1977).

 Although there was evidence of an overall decrease in the faculty and professional staff, the number of football coaches, both head and assistant, employed by the Morehouse Parish School Board did not diminish during the relevant period. The reduction in personnel must be measured in terms of those positions substantially similar to that held by the displaced employee. *Lee v. Pickins County School System,* 563 F.2d 143, 145 n. 1 ("*Singleton* refers to 'a reduction in the number of principals, teachers, teacher-aides, or other professional staff ...'· 419 F.2d at 1218. Accordingly, it is clearly appropriate to look solely to the number of principals involved instead of the total number of personnel involved."); *Ayers v. Western Line Consolidated School District,* 555 F.2d 1309 (5th Cir.1977), *rev'd in part sub nom. on other grounds, Givhan v.. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (counselor positions). *See generally Moore v. Tangipahoa Parish School Board,* 594 F.2d 489 (5th Cir.1979). Pegues having thus failed to discharge his burden of proving the requisite elements of a *Singleton* violation, *Wright v. Houston Independent School District,* 569 F.2d 1383 (5th Cir.1978), his claim was properly denied. In light of this holding, we need ·not address the propriety of the trial court's treatment of the laches issue.

*Costs* ·

Contending that Pegues' arguments on appeal are patently frivolous, defendants ask us to exercise our discretion under Fed.R.App.P. 38 [2] to award them double costs and attorneys' fees. Even though Pegues did not succeed in establishing his right to *Singleton* relief, our examination of the record does not lead us to conclude that his assertions of a racially-motivated demotion·and subsequent refusal to appoint him to several ¨head coach vacancies at Bastrop High School are wholly devoid of merit. Nor does the rejection of his *res judicata* and law of the case arguments compel a finding of bad faith, vexatiousness, or frivolousness. We are persuaded that this is not an appropriate case for the imposition of sanctions, and deny defendants' request for damages and costs of appeal.

AFFIRMED.

---

**2.** Rule 38 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Damages and costs are awarded under Rule 38 "as a matter of justice to the appellee and as a penalty against the appellant." Fed.R.App.P. 38, Notes of Advisory Committee on Appellate Rules.